O’NIELL, Chief Justice.
 

 This is a suit for payment for lands and the improvements thereon used or destroyed for levee purposes. In the construction of a levee on the plaintiff’s farm, an area of 21 acres was actually taken for the levee and borrow pits and an area of 140.1 acres was left between the levee and the river. The ifiaintiff claimed 87,525 as the value of all of the 161.1 acres. The district judge gave judgment for $4,S60.56 as the value of the whole area. The board of levee commissioners has appealed.
 

 Before answering the suit, the board filed an exception to the citation and to the
 
 *230
 
 manner of service of the citation. The board complains now of the overruling of the exception. The citation was addressed: “To Board of Levee Commissioners of the 19th Louisiana Levee District, Michael Becker, President, Parish of Natchitoches.” It is contended by counsel for the board that the statute creating the board, Act No. 75 of 1930 (which has been amended by Act No. 205 of 1932), designates the commissioners as “commissioners of the Nineteenth Louisiana Levee District,” but not as a board of commissioners, and hence that the citation should have been addressed to the “commissioners of the Nineteenth Louisiana Levee District.” It is trtfe that in the third section of the statute the commissioners are not called a board of commissioners, but in the fourth section of the act it is declared: “That the several Commissioners provided for in Section 3 of this Act, shall constitute a Board of Levee Commissioners for said district.” And in the sections following, wherever the. commissioners are referred to, they are called the board of commissioners. The citation, therefore, was properly addressed to the board of commissioners. The complaint about the manner of service of the citation is that the president of the board was not in the office of the board when the service was made. Act No. 179 of 1918 provides, in paragraph (7) of section 1, that service of a citation addressed to a public board “shall be made at the office of said * * * board, as fixed by law, ordinance or regulation, upon the chief executive or presiding officer thereof, and in case of his absence, upon any employee thereof above the age of sixteen years found in said office.” The board of levee commissioners had not formally established an office in Natchitoches parish, but held its meetings regularly in a room adjoining the sheriff’s office, in the courthouse. Natchitoches parish was omitted from the district by Act No. 205 of 1932, but was a part of the district when this suit was filed. It appears that the board had an office in Red River parish, where the books and records were kept, but the fact was not known by the sheriff, and perhaps was not known generally, because the meetings were held in the city of Natchitoches, where the president resided. In fact the statute declared that the first meeting should be held in the city of Natchitoches and that all subsequent meetings should be held at the place to be determined by a majority of the members attending the first meeting. It does not appear that the board had selected'a meeting place, when this suit was filed, other than the room in which the first meeting was hel'd. The citation was handed to the president, in person, by a deputy sheriff, either in the room where the meetings were held or in the corridor, and very close to the room. • The deputy sheriff who served the citation testified that he was not certain whether the president of the board was in the room or in the corridor, near the room, but that he, the deputy, was certain that the president of the board was in either one or the other of these places, when the citation was handed to him. Considering that the board was about to hold a meeting, and that the president was there in his official capacity, our opinion is that the service of citation upon him, either in or about to enter the room where the meeting was to be held, was a valid service.
 

 The board of commissioners filed also, before answering the suit, an exception of no
 
 *232
 
 right of action, on the ground that the board was not authorized by the
 
 statute
 
 either to sue or to be sued. The exception was properly overruled because the fourth section of the statute, after specifying some of the powers of the board, declares that the board “shall have all other powers and authority given by existing laws to commissioners of other districts.” The boards of .commissioners of other levee districts, like other political corporations, are invested with the authority to sue and to defend themselves when sued. That authority, therefore, was embraced in the broad terms of the statute in this instance.
 

 On the trial of the case, the judge, being guided by the jurisprudence then prevailing, refused to hear evidence as to the value of the land lying between the levee and the river, because he considered that the land was “destroyed,” in the meaning of section 6 of article 16 of the Constitution, which provides that lands and the improvements thereon “actually used or destroyed” for levees or levee purposes shall be paid for at a price not to exceed the assessed value for the preceding year. In Russell v. Board of Commissioners, 159 La. 330, 105 So. 361, and in Green v. Board of Commissioners, 163 La. 117, 111 So. 619, where a new levee was built to replace one that was washed away by a flood, it was held that the land that was left between the new levee and the river was thereby “destroyed.” But, in those instances, the land between the levee and the river was only a narrow strip of land and was in fact rendered worthless by having the levee constructed behind it. In Mayer v. Board of Commissioners, 177 La. 1119, 150 So. 295, which was decided two months after the present case was decided, the provision in the Constitution requiring levee districts to pay for lands and the improvements thereon “actually used or destroyed” for levees or levee purposes was construed strictly; and hence it was held that the levee district was not obliged to pay for land left between the levee and the river, in the construction of a levee, where the land was of such wide area and of such elevation as to be not rendered worthless by having the levee behind it. In that ease the area occupied by the levee and borrow pits was 29.20 acres, for which the levee district was obliged to pay; and the area left between the new and the old levee was 105.99. The judgment of the district court, in that case, condemning the board of levee commissioners to pay for the 105.99 acres, was set aside on appeal, and the case was remanded to permit the board to introduce evidence to prove that the area of 105.99 acres, between the levees, was not “destroyed,” or rendered worthless, by having the new levee behind it. In the present case the area left between the levee and the river is greater than the area that was left between the new and the old levee in the Mayer Case. In this case the land between the levee and the river is about 6 acres wide — from levee to river — and about 24 acres long; and we infer from the testimony of the plaintiff himself that he has actually cultivated a part of that area since the levee was built. We shall therefore set aside the judgment appealed from and remand the case to the district court to permit the board of levee commissioners to introduce evidence to prove that the area of 140.1 acres of land between the levee and the river was not “destroyed,” or rendered worthless, by the building of the levee behind it.
 

 
 *234
 
 The judgment is set aside and the case is ordered remanded to the district court for the introduction of evidence on the question as to whether the area of 140.1 acres of land between the levee and the river was “destroyed” by having the levee built behind it, and for further proceedings consistent with the foregoing opinion. The costs of this appeal are to be borne by the plaintiff, and all other court costs are to abide the final determination of the ease.